# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**BOBBY SANDERS,**

    Plaintiff,

v.                                              Case No. 18-CV-1945

**C.O. FRANKE, C.O. RHODE,
CAPTAIN ELSINGER, JOHN KIND,
WARDEN SCOTT ECKSTEIN, and
JANE DOE,**

    Defendants.

---

# ORDER

Plaintiff Bobby Sanders, a pro se inmate at Green Bay Correctional Institution, filed a complaint under 42 U.S.C. § 1983 alleging that C.O. Franke and Captain Elsinger used excessive force against him in violation of his constitutional rights. (ECF No. 1.) He also alleges that C.O. Franke, C.O. Rhode, Captain Elsinger, John Kind, Warden Scott Eckstein, and nurse Jane Doe acted with deliberate indifference toward his serious medical needs in violation of his constitutional rights. (*Id.*) This matter is before the court on Sanders's motion to proceed without prepaying the filing fee (ECF No. 2) and for screening his complaint (ECF No. 1).

The court has jurisdiction to resolve Sanders's motion and screen his complaint in light of his consent to the full jurisdiction of a magistrate judge and the Wisconsin Department of Justice's limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandum of Understanding between the

Wisconsin Department of Justice and this court.

1. **Motion to Proceed without Prepayment of the Filing Fee**

The Prison Litigation Reform Act (PLRA) gives courts discretion to allow prisoners to proceed with their lawsuits without prepaying the $350 filing fee as long as they comply with certain requirements. 28 U.S.C. § 1915. One of those requirements is that the prisoner pay an initial partial filing fee. On December 10, 2018, the court ordered Sanders to pay an initial partial filing fee of $1.69. (ECF No. 5.) Sanders paid the fee on January 22, 2019. Therefore, the court will grant his motion. Sanders will be required to pay the remainder of the $350 filing fee over time in the manner described at the end of this Order.

2. **Screening of the Complaint**

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was visited upon him by a person or persons acting under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The court is obliged to give a plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### 2.1 Allegations in the Complaint

Sanders alleges that on July 13, 2018, at around 3:00 p.m. as he was leaving to take a shower, C.O. Franke was at his cell and instructed Sanders to remove his head garment. (ECF No. 1 at 2.) Sanders complied. (*Id.* at 2-3.) However, before Sanders could exit his cell, Franke slammed Sanders's cell door shut, shutting Sanders's right hand in the door. (*Id.* at 3.) Sanders states he "immediately felt a very sharp pain in [his] fingers and wrist; the pain caused [him] to let out a painful cry." (*Id.* at 3.) He says that he pushed against the door with his left hand in an effort to free his right and told Franke that his right hand was in the cell doorway. (*Id.*) Franke continued to try to close the door. (*Id.*) Sanders states that once Franke "noticed"

3

Sanders's hand was in fact in the doorway, Franke "eased up a bit," allowing Sanders to remove his hand. (*Id*.) Franke then slammed the cell door closed and walked off. (*Id*.)

Sanders states that he "started to experience numbing pain in [right] wrist." (ECF No. 1 at 3.) He saw that he had several lacerations on his hand and realized he could not move his fingers without pain. (*Id*. at 3-4.) Approximately twenty minutes later, when his cell was reopened for inmates to return from taking showers, Sanders says he left to inform the unit manager, Ms. Francois (not a defendant), of Franke's assault. (ECF. No. 1 at 4.) Sanders showed her his hand. (*Id*.) Francois instructed Sergeant Przybylinkski to send Sanders to the health services unit (HSU) for his injuries. (*Id*.)

Sanders says he returned to his cell to dress and retrieve his ID card in preparation for transport to the HSU. (ECF No. 1 at 4.) As he did, however, C.O. Laplant—described as a defendant in the body of the compliant but not named as a defendant in the caption—closed Sanders's cell door. (*Id*.) Sanders states that he promptly explained his injury and told Laplant that Francois had said that Sanders was to go to HSU for his injury. Laplant, however, purportedly cut Sanders off, said that Sanders "wasn't going anywhere," and walked off. (*Id*.)

Soon thereafter, as Przybylinkski passed Sanders's cell, Sanders stopped him and told him that he was ready to go to the HSU. (ECF No. 1 at 4.) Prybylinkski allegedly replied, "I thought you didn't want to go." (*Id*.) After Sanders told him that was not true, Prybylinkski began to question Sanders about the incident with Franke.

4

(*Id.*) Sanders told Prybylinkski that he had already explained the incident to Francois and so he should talk with her. (*Id.*) Prybylinkski then walked away. (*Id.*)

Moments later, Sanders's cell was opened, and Sergeant Turk (not a defendant) escorted him to the HSU, where Sanders was seen by a nurse. (ECF No. 1 at 4-5.) In answering the nurse's question about how his injury occurred, Sanders explained that Franke had slammed Sanders's hand in his cell door. (*Id.* at 5.) Sanders asked the nurse to take photos of the injury, to which she responded that the camera was locked in security. (*Id.*) When Sanders told her that he would wait for her to retrieve it, the nurse left the room, went down the hall, and began talking with an officer. (*Id.*) Sanders followed and overheard the nurse tell the officer that Sanders was refusing treatment. (*Id.*) Sanders told the officer he was not refusing treatment but requesting that his hand be photographed. (*Id.*) He said that he would not sign any documents stating otherwise. (*Id.*) The nurse responded that the situation was out of her hands, and Sanders was escorted back to his cell without any treatment. (*Id.*)

At around 4:25 p.m. that same day, Sanders was let out of his cell for dinner, at which point he informed Captain Elsinger about the assault and showed him his injured hand. (ECF No. 1 at 5.) Sanders states that Elsinger said he already knew about the incident but that he did not believe Sanders. (*Id.*) However, he told Sanders he would take photos of his hand later. (*Id.*) During this exchange, Sanders states that C.O. Rhode was present and was "imitating [Sanders] and laughing at the situation." (*Id.*)

At about 9:30 p.m., Elsinger came to Sanders's cell and asked if Sanders wanted photos taken of the injuries to his hand. (ECF No. 1 at 5.) Sanders said yes. (*Id*.) Elsinger tightly placed handcuffs on Sanders and allowed them to remain despite Sanders telling him that the tight handcuffs were causing him extreme pain. (*Id*.) Elsinger escorted Sanders downstairs, took the photos, and told Sanders "the incident would be documented, and an incident report would be written." (*Id*.) Sanders heard nothing else regarding the incident, nor did he receive any treatment for his injuries. (*Id*.) He says he "had to deal with the pain on [his] own with ice and [over-the-counter] pain medications." (*Id*.)

He seeks compensatory and punitive damages. (ECF No. 1 at 7.)

### 2.2 *Analysis*

The Eighth Amendment's proscription of cruel and unusual punishment prohibits prison authorities from "unnecessarily and wantonly inflicting pain on inmates." *See Rivera v. Drake*, 497 F. App'x 635, 637 (7th Cir. 2012). Use of force that is maliciously motivated, unrelated to institutional security, and lacks a legitimate penological justification violates the Eighth Amendment. *Id*.

Both Franke's and Elsinger's conduct, as alleged, was forceful, malicious, and without penological justification. Initially closing Sanders's hand in the cell door could be viewed as an accident or, at most, a negligent act, and Sanders acknowledges that Franke eased up when he noticed Sanders hand was actually caught in the door. However, Sanders alleges that Franke repeatedly pushed against the door in an attempt to close it notwithstanding Sanders's cries of pain and assertions that his

6

hand was in the cell door. Additionally, Sanders alleges that, despite telling Elsinger that the handcuffs he had placed on Sanders were exacerbating the pain of his injury, Elsinger maintained the use of the tightly placed handcuffs. Thus, Sanders has sufficiently alleged and may proceed on claims of excessive force against Franke and Elsinger.

Next, Sanders's allegations support a claim of failure to prevent harm against Security Director John Kind and Warden Scott Eckstein. An Eighth Amendment claim for failure to prevent harm requires the prisoner to show he was incarcerated under conditions posing a substantial risk of serious harm that the prison officials knew of but disregarded. *Dixon v. Godinez*, 114 F.3d 640, 645 (7th Cir. 1997) (citing *Del Raine v. Williford*, 32 F.3d 1024, 1032 (7th Cir. 1994)). Sanders alleges the assault was characteristic of Franke, and that both Kind and Eckstein knew of Franke's history of violence toward inmates. However, they failed to address it. Thus, Sanders has sufficiently stated and may proceed with his claim against Kind and Eckstein for failing to prevent harm.

Sanders's allegations also support claims of deliberate indifference against nurse Jane Doe and Laplant. "The Eighth Amendment safeguards the prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'" *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) (quoting *Rodriguez v. Plymouth Ambulance Srv.*, 577 F.3d 816, 828 (7th Cir. 2009)). If prison officials are "deliberately indifferent to prisoners' serious medical needs," *id.*, or they "act with 'deliberate indifference' to a substantial risk of

7

serious harm to an inmate['s]" health or safety, *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (citation omitted), then they violate the Constitution. A claim based on deficient medical care must demonstrate 1) an objectively serious medical condition or serious harm, and 2) an official's deliberate indifference to that condition or harm. *Id*. at 834; *Arnett*, 658 F.3d at 750.

The Court of Appeals for the Seventh Circuit has held that serious medical needs encompass not only conditions that are life-threatening or that carry risks of permanent, serious impairment if left untreated but also those in which the deliberately indifferent withholding of medical care results in needless pain and suffering. *Gutierrez v. Peters*, 111 F.3d 1364, 1371 (7th Cir. 1997). At this stage, the court will presume that Sanders's hand injury was a serious medical need.

As for the Eighth Amendment's subjective component, the Supreme Court has held that deliberate indifference requires that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Although Sanders does not name him as a defendant in the caption of his complaint, Sanders does refer to Laplant as a defendant in the body of his complaint. And his allegation that Laplant failed to take Sanders to the HSU for treatment for his hand even after Sanders explained the incident, showed Laplant his injury, and stated he wanted to go, suggests that Sanders intended to include Laplant as a defendant in this case. Thus, the court will add Laplant as a defendant and allow Sanders to proceed against him on his claim for deliberate indifference. *See Donald v. Cook Cty. Sheriff's Dep't*,

8

95 F.3d 548, 555–56 (7th Cir. 1996) (noting that courts are charged with assisting pro se litigating who state allegations against individuals not necessarily named in the caption of their pro se complaint).

Further, nurse Jane Doe failed to provide any treatment to Sanders after he presented in HSU, told her what happened, and showed her his hand. Thus, Sanders may also proceed with a deliberate indifference claim nurse Jane Doe. Because Sanders does not know the name of the Jane Doe nurse he has been allowed to proceed against, the court will allow him to conduct discovery for the limited purpose of helping him identify the name of the Jane Doe defendant. *See id.* After the defendants' attorney files an appearance, Sanders may serve discovery upon defendants (by mailing it to their attorney at the address in his or her notice of appearance) to get information that will help him identify the name of the Jane Doe defendant. For example, Sanders may serve interrogatories (written questions) under Rule 33 of the Federal Rules of Civil Procedure or document requests under Rule 34 of the Federal Rules of Civil Procedure.

After Sanders identifies the name of the Jane Doe defendant, he must file a motion to substitute her name for the Jane Doe placeholder. After the Jane Doe defendant has been served with and has responded to the complaint, the court will issue a scheduling order setting deadlines for the completion of all other discovery and for filing dispositive motions. Sanders should not start the discovery process for all other discovery until after all of the defendants have been identified, have filed their answer, and the court has issued a scheduling order.

Within forty-five days of the defendants' attorney filing an appearance, Sanders must either identify the name of the Jane Doe defendant or file a letter explaining why he is unable to do so. If he does not do either of these things, the court may dismiss his claim against this defendant based on his failure to diligently pursue it. Civil L.R. 41(c).

Lastly, the court finds that Sanders has not sufficiently asserted a claim against C.O. Rhode. He does not state what Rhode did or failed to do to violate his constitutional rights or otherwise contribute to any of his alleged constitutional deprivations. Under section 1983, an individual can be liable only if that individual is personally responsible for a constitutional deprivation. *See Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 614-15 (7th Cir. 2002); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Only persons who cause or participate in the violations are responsible."). There is no supervisory liability, collective liability or vicarious liability under 42 U.S.C. § 1983. *See Pacelli v. deVito*, 972 F.2d 871, 877 (7th Cir. 1992). In other words, there is no liability unless the defendant is personally involved in the violation of plaintiff's rights. *See Morfin v. City of East Chicago*, 349 F.3d 989, 1001 (7th Cir. 2003). Sanders asserts merely that Rhode overheard his conversation with Captain Elsinger and that he made fun of Sanders. The court will, therefore, dismiss C.O. Rhode as a defendant.

3. **Conclusion**

**IT IS THEREFORE ORDERED** that Sanders's motion for leave to proceed without prepayment of the filing fee (ECF No. 2) is **GRANTED**.

10

**IT IS ALSO ORDERED** that C.O. Rhode is **DISMISSED** as a defendant.

**IT IS ALSO ORDERED** the C.O. Laplant is **ADDED** as a defendant.

**IT IS FURTHER ORDERED** that, pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of Sanders's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on the state defendants C.O. Franke, C.O. Laplant, Captain Elsinger, Security Director John Kind, and Warden Scott Eckstein.

**IT IS ALSO ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this court, defendants C.O. Franke, C.O. Laplant, Captain Elsinger, Security Director John Kind, and Warden Scott Eckstein shall file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

**IT IS ALSO ORDERED** that, within forty-five days of the defendants' attorney filing an appearance, Sanders must identify the name of the Jane Doe defendant and file a motion with the court to substitute the name for the Doe placeholder, or file a letter explaining why he is unable to do so. The court may dismiss Sanders's claim against Jane Doe based on his failure to diligently pursue it if he does not do either of these things. *See* Civil L.R. 41(c).

**IT IS FURTHER ORDERED** that the agency having custody of Sanders shall collect from his institution trust account the $348.31 balance of the filing fee by collecting monthly payments from his prison trust account in an amount equal to 20%

of the preceding month's income credited to his trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Sanders is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this Order along with Sanders's remaining balance to the receiving institution.

**IT IS ALSO ORDERED** that a copy of this order be sent to the officer in charge of the agency where Sanders is confined.

**IT IS FURTHER ORDERED** that the parties may not begin all other discovery until after the court enters a scheduling order setting deadlines for such discovery and for the filing of dispositive motions.

**IT IS FURTHER ORDERED** that, pursuant to the Prisoner E-Filing Program, Sanders shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court.[1] If Sanders is no longer incarcerated at a Prisoner E-Filing institution, he will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Milwaukee, Wisconsin 53202

The court further advises Sanders that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin this 29th day of January, 2019.

WILLIAM E. DUFFIN
U.S. Magistrate Judge