# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**BOBBY SANDERS,**

    **Plaintiff,**

    v.                                       **Case No. 18-CV-1945**

**JARED FRANKE, *et al.*,**

    **Defendants.**

## ORDER

Plaintiff Bobby Sanders, a Wisconsin state prisoner who is representing himself, filed this lawsuit under 42 U.S.C. § 1983. This court screened his complaint and allowed him to proceed on Eighth Amendment claims against several defendants, including a Jane Doe nurse. (ECF No. 9.) Sanders later substituted defendant Rachel Larson for the Jane Doe placeholder. (ECF No. 17.)

The defendants moved for summary judgment (ECF No. 22) but failed to submit proposed findings of fact in support, as Civil L. R. 56(b)(1)(C) requires. The court allowed the defendants to submit their proposed findings of fact by February 18, 2020, and gave Sanders thirty days to respond. (ECF No. 32.) The defendants submitted their proposed findings of fact on February 4, 2020 (ECF No. 33), to which Sanders did not respond. Therefore, the defendants' motion is fully briefed and ready for resolution.

## BACKGROUND

The facts in this section are taken from the defendants' proposed findings of fact (ECF No. 33), their declarations in support (ECF Nos. 24–25), and video footage of the incident in question (ECF No. 27). In his brief in opposition to summary judgment, Sanders states that he "disagree[s] with all/each of the defendants [sic] proposed findings of facts." (ECF No. 30 at 5.) But the defendants had not yet filed their proposed findings of fact when Sanders submitted his brief in opposition. And once the defendants' proposed findings of fact were filed, Sanders did not respond to them, provide his own statement of proposed facts, or submit an affidavit or other evidence in opposition to the defendants' motion, as this court's local rules require. *See* Civil L. R. 56(b)(2)(B)(i)–(ii), (C).

Therefore, the court will consider the defendants' proposed findings of fact admitted for purposes of this decision. *See* Civil L. R. 56(b)(4); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission."). Because Sanders's complaint is verified, however, it is the equivalent of an affidavit for purposes of this decision. *See Devbrow v. Gallegos*, 735 F.3d 584, 587 (7th Cir. 2013); *Ford v. Wilson*, 90 F.3d 245, 246–47 (7th Cir. 1996). The court will consider the contentions in his complaint to the extent they are supported by evidence in the record. *Devbrow*, 735 F.3d at 587.

**A. The Parties**

The court allowed Sanders to proceed on his claims against Corrections Officers Jared Franke and Alexander Laplant, Captain James Elsinger, Security Director John Kind, Warden Scott Eckstein, and Nurse Rachel Larson. At all times relevant to this lawsuit, the defendants worked at the Green Bay Correctional Institution, where the plaintiff was a prisoner. (ECF No. 1 at 1–2, 6.)

**B. Sanders's Complaint**

Sanders states that on July 13, 2018, he was on his way out of his cell to shower when Officer Franke approached his cell and ordered him to remove his du-rag. (ECF No. 1 at 2.) Sanders asserts that Franke has a history of being aggressive with inmates, so he immediately complied and moved to leave his cell. (*Id.* at 2–3.) As Sanders attempted to walk out, he states, Franke slammed the cell door shut, causing Sanders to jump back out of the way. (*Id.* at 3.) As he did so, his right hand was caught in the door, causing him significant pain. (*Id.*) Sanders attempted to pull the door open as he told Franke that his hand was caught in the door. (*Id.*) Sanders states that Franke ignored him and "pushed on the cell door violently several more times" before noticing Sanders's hand was stuck. (*Id.*) Franke "ease[d] up a bit" so that Sanders could pull his hand back, slammed the cell door shut, and "walked off as if nothing ever happen[ed]." (*Id.*)

It is undisputed that Officer Franke closed Sanders's hand in the cell door and that Sanders suffered cuts and abrasions to his hand. (ECF No. 33, ¶¶ 1 & 3.)

3

Sanders's injuries are evident in pictures the defendants attached to their summary judgment materials. (ECF No. 24-2 at 2–7.)

Sanders states that he told the unit manager (not a defendant) what had happened and showed her his hand. (ECF No. 1 at 4.) The unit manager instructed a sergeant (also not a defendant) to send Sanders to the Health Services Unit ("HSU") for treatment. (*Id.*) Sanders states that Officer Laplant prohibited him from going to the HSU, but another sergeant escorted Sanders to the HSU a few minutes later. (*Id.*) Sanders explained to Nurse Larson what had happened and showed her his injuries. (*Id.* at 4–5.) Instead of taking pictures of his injuries, Larson left the room to tell an officer that Sanders was refusing treatment. (*Id.* at 5.) Sanders followed Larson and told her that he was not refusing treatment and would not sign any paper stating that he was. (*Id.*) Larson told Sanders "that the situation was out of her hands" and had Sanders taken back to his cell, where he was ordered to lock in without receiving any treatment. (*Id.*)

Sanders states that he later spoke with Captain Elsinger about his injury. (ECF No. 1 at 5.) Elsinger told Sanders that he did not believe his story about the incident but would see him later to take pictures. (*Id.*) When Elsinger arrived to take Sanders for photographing of his injuries, Elsinger used tight handcuffs even though Sanders told Elsinger before he applied the handcuffs that he "was in extreme pain."

4

(*Id.*) Sanders states that he never received treatment for his injuries and "had to deal with the pain on my own with ice and (O.T.C.) pai[n] meds." (*Id.*)

Sanders asserts that Officers Franke and Elsinger used excessive force on him on July 13, 2018. (ECF No. 1 at 6.) He accuses Nurse Larson of failing to treat his hand injuries. (*Id.*) He also asserts that Security Director Kind and Warden Eckstein failed to protect him from Franke despite knowing Franke has a history of being too aggressive toward inmates and that inmates had filed complaints about him in the past. (*Id.*)

**C. Video Footage**

The court has reviewed the video footage of the incident. There is no audio. The camera shows the bottom floor of the prison and the second and third rows of cell doors from an angle. The camera does not look into the cells. The cell doors are grated and a dark color, and they slide open to the right and close to the left. At approximately one minute into the video the doors of the cells on the lower of the two rows unlock. The doors slide open, and inmates exit the cells and begin walking away from the camera holding transparent plastic bags.

At 1:35 into the video a corrections officer walks into the frame and follows the inmates down the walkway, closing cell doors as he goes. At 1:44, he approaches a cell door in the middle of the frame in between green and red swatches of color on the wall. He lifts his right arm to begin closing the door but pauses and lets his arm fall back to his side. The officer appears to speak with someone inside the cell through the open door. He places his left arm on the railing along the walkway and begins to

5

slide the door closed using his right hand, but he stops before it is fully closed and opens it again. The officer gestures with his left arm out and away from the cell toward the walkway. He pauses for a moment before again using his right arm to slide the cell door closed.

But at 1:51, as he is sliding the cell door shut, an object emerges from the cell door, though it is hard to discern whether it is a body part (perhaps an arm, leg, or hand) or a bag like those the other inmates were carrying. Just as the object emerges, the door appears to hit against the object and slides slightly open again. The officer slightly reopens the door and moves his left arm and hand into the cell, as if to move the object away from the path of the cell door. He then steps away from the door before guiding it closed with both hands. The officer continues down the walkway, closing cell doors, and eventually walks out of the frame. There is no further movement of the cell door, and no one exits the cell before the video ends.

A second corrections officer on the ground floor walks in the direction of the cell where the previous officer had been and turns his head up, as if speaking with someone on the second level. He pauses to face the cell before putting his arms out from his body, palms up. He then turns and walks back in the direction from which he came, in the same direction that the inmates and the first officer had been walking.

**D. Other Evidence**

Officer Franke submitted an incident report about the July 13, 2018 incident. (ECF No. 25-2 at 16.) He wrote that, when he approached Sanders's cell, Sanders was sitting on his bunk watching television and was unprepared to shower. (*Id.*) Franke

told Sanders "that if he was showering, he had to hurry," but Sanders did not move. (*Id.*) Franke again told Sanders he needed to go now if he was showering, and Sanders slowly stood up. (*Id.*) Franke a third time told Sanders he needed to leave now if he wanted to shower, but Sanders merely stood and watched the television. (*Id.*) Franke began to close the cell door, when Sanders said, "I'm coming, I'm coming" but continued not to move toward the door. (*Id.*) Franke again began to close the door, but just as it was about to close, Sanders moved what Franke believed was Sanders's laundry bag between the door and the door jamb. (*Id.*) When the door would not close, Franke ordered Sanders to move his laundry bag. (*Id.*) Sanders moved the bag, and Franke closed the door and walked away "with no further incident." (*Id.*) A sergeant later informed Franke that Sanders was complaining that Franke had closed his hand in the door. (*Id.*)

The photographs taken of Sanders's hands on July 13, 2018, are somewhat grainy, and Sanders's tattoos make it difficult to see clearly what, if any, damage was done to his hand. (ECF No. 24-2 at 2–7.) However, the pictures seem to show that his hand was not discolored or noticeably swollen. (*Id.*; ECF No. 33, ¶ 3.) Sanders did not seek or receive any follow-up treatment about pain in his hand but did seek medical treatment for his asthma in the weeks after the incident. (ECF No. 33, ¶ 3.)

**E. Exhaustion**

Sanders filed administrative grievances against Officer Franke about his use of force on July 13, 2018. (ECF No. 25, ¶ 7; ECF No. 25-2 at 10.) Sanders also grieved each of his other claims against the defendants except his claim that Elsinger

7

handcuffed him too tightly while escorting him for the photographing of his hand. (ECF No. 33, ¶ 2.)

## SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

## ANALYSIS

The Eighth Amendment protects convicted prisoners from cruel and unusual punishments, including the denial of adequate medical care. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A prisoner must show both that he "is incarcerated under conditions posing a substantial risk of serious harm" and that a prison official had a "sufficiently culpable state of mind." *Id.*

8

A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015) (citing *Farmer*, 511 U.S. at 837). In the context of a claim regarding medical treatment, the inmate must allege both that he "suffered from an objectively serious medical condition" and that the defendants were "deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (citing *Farmer*, 511 U.S. at 834). A non-life-threatening medical condition that, left untreated, results in "needless pain and suffering" satisfies the objective component of a deliberate indifference claim. *Gutierrez v. Peters*, 111 F.3d 1364, 1371 (7th Cir. 1997) (citing *Estelle*, 429 U.S. at 106). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not" does not amount to cruel and unusual punishment. *Id.* at 838.

The Eighth Amendment also protects a convicted inmate from "the unnecessary and wanton infliction of pain." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Establishing an Eighth Amendment claim of excessive force requires a showing that (1) "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation," and (2) "'the officials act[ed] with a sufficiently culpable state of mind.'" *Hudson*, 503 U.S. at 8 (quoting *Wilson v. Seiter*, 501 U.S. 294, 303 (1991)). The "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore

9

discipline, or maliciously and sadistically to cause harm." *Id.* at 6 (citing *Whitley*, 475 U.S. at 320–21).

### A. Officer Franke

Sanders states that Officer Franke slammed his cell door shut on his hand and then "pushed on the cell door violently" several times. The video evidence does not support those assertions. The video shows that Officer Franke begins to close the door once, using a minimal amount of force, before pulling the cell door open and motioning or talking to the person inside the cell, presumably Sanders. He then uses the same amount of force again to close the door before it bumps against an object, which was Sanders's hand, though Franke believed it to be his laundry bag. Franke moves the hand and Sanders away from the door's path, closes it without significant force, and walks off.

Nothing in the video footage suggests Franke's closing of the cell door was done maliciously or sadistically to cause Sanders harm. The video shows that he closed the cell door not violently but with only the amount of force necessary to secure the door shut. In no way does the video support a characterization of the cell door being slammed shut. Even if Franke's use of force was greater than necessary, there is no evidence that he subjectively intended to injure Sanders. Although the door evidently closed on Sanders's hand, Franke's uncontested incident report shows that he believed that door had closed against Sanders's laundry bag. The evidence shows that, at most, Franke may have acted negligently when he closed the door and did not realize that Sanders's hand, and not his laundry bag, was in the way. But even if

10

that were the case, neither negligence nor gross negligence is enough to support an Eighth Amendment violation. *See Farmer*, 511 U.S. at 835-36; *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001).

That Sanders suffered only minor injuries further suggests that Franke did not use excessive force when closing the cell door. Although Sanders need not demonstrate a significant injury to satisfy the Eighth Amendment, he cannot premise his claim "on a *de minimis* use of physical force." *Outlaw v. Newkirk*, 259 F.3d 833, 838 (7th Cir. 2001) (citing *DeWalt v. Carter*, 224 F.3d 607, 620 (7th Cir. 2000), *abrogated in part on different grounds by Savory v. Cannon*, 947 F.3d 409, 423–24 (7th Cir. 2020) (en banc)). Sanders suffered only cuts and a sore wrist, which he states he treated with ice and pain medication. Those injuries do not support a conclusion that Franke violently or forcefully closed the cell door. *See id.* (affirming judgment against prisoner who alleged that correctional officer had used excessive force when he closed prisoner's hand in cuff port of cell door, causing slight swelling and temporary pain in fingers).

Sanders asserts that Franke falsified his incident report. He contends that Franke falsely stated that Sanders was watching television because he did not have one at the time. (ECF No. 30 at 1.) But Sanders provides no evidence in support of that assertion, not even an affidavit attesting that he had no television on July 13, 2018. Moreover, the video footage belies Sander's characterization of the incident and supports Franke's version, as documented in the incident report. The footage does not

11

support Sanders's claim that Franke intentionally and maliciously closed the cell door on his hand.

### B. Officer Laplant

There is no evidence supporting Sanders's claim against Officer Laplant for refusing to take him to the HSU for treatment of his hand. Sanders has not provided evidence showing his injury was serious. The pictures of his hands show three small wounds on Sanders's right hand. (ECF No. 24-2 at 3–7.) There is no obvious discoloration or swelling. Sanders does not assert that he suffered any long-lasting symptoms of his injuries, and he states he was able to treat his pain with ice and over-the-counter medication. (ECF No. 1 at 5.) There is no evidence that his hand or wrist was sprained or broken, which likely would qualify as a serious medical condition. Nor did he submit any medical request forms seeking additional treatment for his hand.

Even assuming Sanders was experiencing significant pain from the incident, he states only that Officer Laplant did not immediately take him to the HSU for medical treatment, delaying his eventual treatment. For a delay in treatment to be actionable, "a plaintiff must also provide independent evidence that the delay exacerbated the injury or unnecessarily prolonged pain." *Petties*, 836 F.3d at 730–31. Sanders has provided no such evidence. Moreover, he states that, only minutes after Laplant refused to take him to the HSU, a sergeant escorted him there. Although this small delay may have increased Sanders's total pain from his hand injury, a few minutes is not enough for an injury of this severity (or lack of it) to hold Laplant liable

for inflicting cruel and unusual punishment. *See Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997) (noting that not "every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim").

**C. Nurse Larson**

Nor does the evidence support Sanders's claim of deliberate indifference against Nurse Larson. As noted above, the pictures in the record do not suggest Sanders's injury was serious. The only evidence in the record pertaining to Larson's treatment of Sanders is a progress note in which Larson referred to DOC 3220 and wrote that Sanders refused medical attention for his hand. (ECF No. 24-3 at 13.) The DOC 3220 is a form labeled "Refusal of Recommended Health Care." (*Id.* at 17.) On that form is a checked box signifying that Sanders had "Refuse[d] to permit a health provider to conduct a recommended medical examination/screening." (*Id.*) Larson and a non-defendant correctional officer signed the form and noted that Sanders had refused to sign it. (*Id.*)

Sanders asserts that "there [is] not any evidence's that I refuse treatment[.] I never told or sign a refused papers [sic]." (ECF No. 30 at 3.) But there *is* evidence that he refused treatment—the progress note and DOC 3220 stating that he refused treatment. Sanders does not contest the authenticity of those documents. In his complaint, however, Sanders stated that he told Larson he was not refusing treatment and would not sign any paper stating that he was. It is therefore undisputed that Sanders did not receive treatment, but it is disputed *why* he did not receive treatment—either because Larson refused to treat Sanders (as Sanders

13

asserts) or because Sanders refused to let Larson treat him (as the defendants contend).

Even if Larson refused to treat Sanders's injury, Sanders fails to provide sufficient evidence that his medical condition was objectively serious. Sanders states in his complaint that he suffered cuts on his fingers and wrist. But he also states he was able to wash the cuts in his sink. And the pictures the defendants submitted show the cuts are small and had scabbed over by that evening when the pictures were taken. Sanders states he experienced "numbing pain" and pain when he attempted to move his fingers. But he also states that he was able to treat his pain with ice and over-the-counter medication. Sanders does not assert that he suffered any lasting injury or limited use of his hand because Larson did not treat him. The evidence does not support a conclusion that the cuts on his hand and temporary pain in his fingers and wrist constituted an objectively serious medical need. *See Outlaw*, 259 F.3d 838 (concluding that swelling and temporary pain suffered by prisoner when cuff port was closed on his hand were minor injuries); *White v. Matti*, 58 F. App'x 636, 638 (7th Cir. 2002) (concluding that lacerations, bruises, cuts, and swelling suffered by inmate when food trap was closed on his arm constituted minor injuries). Therefore, Larson is not liable under the Eighth Amendment for not treating Sanders's injury, even if she intentionally refused to treat him.

**D. Captain Elsinger**

Sanders states that Captain Elsinger applied handcuffs tightly to Sanders's injured hand despite knowing that his hand was injured and despite Sanders telling

him that he was in pain. Once again, Sanders submitted no evidence to support his assertions. Even if he had, he states that he told Elsinger only once (and only *before* being handcuffed) that he was in pain, and he does not state whether the handcuffing itself caused him additional pain or injury or whether he sought medical treatment for any injury caused by the handcuffs. Sanders's assertions do not support a claim of excessive force against Elsinger. *See Tibbs v. City of Chicago*, 469 F.3d 661, 666 (7th Cir. 2006) (affirming dismissal of excessive-force claim based on tight handcuffing because inmate complained only once about the tight handcuffs and did not allege degree of pain or resulting injury).

Moreover, Sanders failed to exhaust his administrative remedies regarding his handcuffing claim against Elsinger. Under the Prison Litigation Reform Act, an inmate cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Exhaustion requires that an inmate comply with the rules applicable to the grievance process at the inmate's institution. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The Court of Appeals for the Seventh Circuit applies a "strict compliance approach to exhaustion," *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006), and expects inmates to adhere to "the specific procedures and deadlines established by the prison's policy." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015)

(citing *Woodford*, 548 U.S. at 93). Because exhaustion is an affirmative defense, the defendants bear the burden of proving that Sanders failed to exhaust. *See Pavey v. Conley*, 544 F.3d 739, 740–41 (7th Cir. 2008) (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)).

Wisconsin inmates must file an administrative complaint within fourteen days of an incident. Wis. Admin. Code § DOC 310.07(2). Inmates must exhaust all administrative remedies that the DOC has promulgated by rule before commencing a civil action against an officer, employee, or agent of the DOC. Wis. Admin. Code § DOC 310.05. It is undisputed that Sanders did not file an inmate complaint alleging that Elsinger handcuffed him too tightly. (ECF No. 33, ¶ 2; ECF No. 25, ¶ 12; ECF No. 25-1.) He did grieve Officer Franke closing the cell door on his hand, but he does not allege in that grievance that Elsinger had used excessive force on him when handcuffing him that evening. Because he failed to file a complaint about Elsinger's actions, Sanders failed to exhaust his administrative remedies on this claim, which must be dismissed.

### E. Security Director Kind and Warden Eckstein

Sanders submitted no evidence in support of his assertion that Franke has a history of being aggressive with inmates and has faced previous complaints about his behavior. Nor did he submit any evidence that Security Director Kind and Warden Eckstein were aware of Franke's past behavior and disregarded the risk he purportedly posed to Sanders and other inmates. He merely reiterates the claims from his complaint and asserts that, if the court reviewed Franke's work history, it

16

"would also see he ha[s] a history of assaults and has injur[ed] inmates in the past." (ECF No. 30 at 4.) Sanders did not submit any evidence documenting Franke's work history or purported past complaints about his aggressive nature. There is no support in the record for his claims against these defendants and no basis to hold them liable. Defendants Kind and Eckstein are entitled to judgment as a matter of law.

### F. Qualified Immunity

Because the court is granting each defendant summary judgment on the merits, they do not need qualified immunity. *See Sierra-Lopez v. Cnty.*, No. 17-CV-1222-PP, 2019 WL 3501540, at *10 (E.D. Wis. July 31, 2019) (citing *Viero v. Bufano*, 925 F. Supp. 1374, 1387 (N.D. Ill. 1996), and *Antepenko v. Domrois*, No. 17-CV-1211, 2018 WL 6065347, at *6 (E.D. Wis. Nov. 20, 2018)).

### CONCLUSION

**IT IS THEREFORE ORDERED** that the defendants' motion for summary judgment (ECF No. 22) is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk's office shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 12th day of March, 2020.

WILLIAM E. DUFFIN
U.S. Magistrate Judge